IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Dr. Evelyn Matta Fontanet by her; Caparra Internal Medicine Service Group, LLC.; Dr. Salvador Ribot by him and his conjugal partnership constituted by him with Amparo Díaz Ramos; Policlínica Dr. Salvador Ribot Ruiz, Inc.; Dr. Pedro F. del Valle and his conjugal partnership constituted by him and Vanessa Díaz Paoli; Dr. José A. Torres Flores and his conjugal partnership constituted by him and Ana Angeles García Maldonado; Dr. Almilcar Torres Figueroa by him and his conjugal partnership constituted by him and Sandra Quijano<br><br>Plaintiffs<br><br>V.<br><br>MSO of Puerto Rico, LLC; MSO of Puerto Rico Inc.; MSO Holdings, Inc.; MSO Holdings, LLC; MMM Healthcare, Inc.; MMM Healthcare, LLC.; MMM Holdings, LLC; MMM Holdings, Inc.; Castellana Physician Services, LLC; Castellana Physician Services, Inc.; and Comprehensive Geriatric Care of San Juan, Inc.<br><br>Defendants | CIVIL NO.<br><br>DECLARATORY JUDGMENT, RESTITUTION BY ORDINARY CIVIL ACTION, DAMAGES REQUESTED DUE TO THE BREACH OF LEGAL DUTIES STATED IN THIS COMPLAINT<br><br>PLAINTIFFS DEMAND TRIAL BY JURY |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COME NOW** the plaintiffs, through their undersigned attorneys and very respectfully state, allege and pray:

**I. JURISDICTION AND VENUE**

1.    This Court has jurisdiction over causes of action brought under the Fifth and Fourteenth Amendments to the Constitution of the United States of America, under the Federal Public Health Law, Sections 42 CFR §417.104(a)(1)(2), 42 CFR §422.202(d)(1)(i)(II), 42 CFR § 422.561, 564, 612, and under the Federal Rules of Civil Procedure, because all causes of action constitute federals questions[1] 28 U.S.C. § 1331. It also has jurisdiction to hear causes of action under the SERVICES AGREEMENT[2] BETWEEN INDEPENDENT PRACTICE ASSOCIATION (IPA) And PRIMARY CARE PHYSICIAN (PCP)

2. This Federal Court is the designated forum for the **final interpretation of the federal laws** enacted by the United States Congress, and to adjudicate the conduct contrary to them. All events that gave rise to the claims presented in the captioned complaint against the defendants occurred in this federal judicial district. Venue is proper in the District of Puerto Rico, pursuant to 28 U.S.C. §1391. All parties reside in Puerto Rico and are incorporated in the island with their principles place of business here. In addition, a substantial part of the acts, events and/or omissions giving rise to these claims occurred in Puerto Rico.

---

[1] based on the federal questions presented in this complaint and stated in *Fairfield County Medical Association v. United Healthcare of New England*, 985 F.Supp.2d 262(2013) and *Fairfield County Medical Association v. United Healthcare of New England, Inc.*, 557 F. App'x 53 (2d Cir. 2014) over the claims of Caparra Internal Medicine Services Group, LLC., Policlínica Dr. Salvador Ribot Ruiz, Inc., Dr. Pedro F. del Valle and his conjugal partnership constituted by him and Vanessa Díaz Paoli, Dr. José A. Torres Flores and his conjugal partnership constituted by him and Ana Angeles García Maldonado and Dr. Almilcar Torres Figueroa by him and his conjugal partnership constituted by him and Sandra Quijano. This Court also has supplemental jurisdiction over all claims arising under the laws and Constitution of Puerto Rico herein asserted pursuant to 28 U.S.C. § 1367 including the claims of all the defendants".

[2] XII MISCELLANEOUS 12.2 Interpretation
The validity, enforceability and interpretation of any of the clauses of this Agreement shall be determined and governed by applicable law of the Commonwealth of Puerto Rico and federal law. **The parties agree that jurisdiction for any legal action** regarding this Agreement shall be in the courts of the Commonwealth of Puerto Rico, or **the federal courts located in San Juan, Puerto Rico**.

3. Defendants alone or in concert **violated constitutional provisions on rights and federal laws** passed by Congress to benefit from federal programs by the prohibited modification and appropriation of economic compensation to plaintiffs.

4. All plaintiffs, whose are **primary health care providers,** have been affected by individual or collusive determinations, actions or omissions of the defendants based on actions contrary to the applications of federal laws, for which they are civilly liable.

5. The federal Constitution grants the right to trial by jury in civil actions, so we request that any action for damages brought before this Honorable Federal District Court of San Juan be adjudicated by a civil jury.

## II. PARTIES

6. Dr. Evelyn Matta Fontanet by her is an internist with residence in Puerto Rico. She is primary care physician for Caparra Internal Medicine Services Group, LLC and her the president.

7. Caparra Internal Medicine Services Group, LLC. (Caparra) is a corporation incorporated pursuant to the laws of the Commonwealth of Puerto Rico with its principal place of business in the island. It is a primary care provider for Medicare beneficiaries in Puerto Rico.

8. Dr. Salvador Ribot is a primary care physician. Dr. Salvador Ribot and his conjugal partnership constituted by him and Amparo Díaz Ramos have with residence in the Puerto Rico. He is a primary care physician of Policlínica Salvador Ribot Ruiz, Inc. and his president.

9. Policlínica Dr. Salvador Ribot Ruiz, Inc. (Policlínica) is a corporation incorporated pursuant to the laws of the Commonwealth of Puerto Rico with its principal place of business in the island. It is a primary care provider for Medicare beneficiaries in Puerto Rico.

10.     Dr. Pedro F. del Valle is an Internist and primary care provider for Medicare beneficiaries in Puerto Rico. Dr. Pedro F. Del Valle and his conjugal partnership constituted by him and Vanessa Diaz Paoli are residents of the Commonwealth of Puerto Rico.

11.     Dr. José A. Torres Flores is a primary care physician amd primary care provider for Medicare beneficiaries in Puerto Rico. Dr. Jose A. Torres Flores and his conjugal partnership constituted by him and Ana Ángeles Garcia Maldonado are residents of the island.

12.     Dr. Amilcar Torres Figueroa is an internist and primary care provider for Medicare beneficiaries in Puerto Rico. Dr. Amilcar Torres Figueroa by him and his conjugal partnership constituted by him and Sandra Quijano are residents of the island.

13.      Defendant MSO of Puerto Rico, LLC (MSO), is a legal entity pursuant to the laws of the Commonwealth of Puerto Rico with its principal place of business in the island.

14.     Defendant MSO of Puerto Rico, Inc. (MSO), is a corporation incorporated pursuant to the laws  of the Commonwealth of Puerto Rico with its principal place of business in the island.

15.     Defendant MSO Holdings, Inc. (MSO), is a corporation incorporated pursuant to the laws of the Commonwealth of Puerto Rico with its principal place of business in the island.

16.     Defendants MSO Holdings, LLC (MSO), (MSO), is a corporation incorporated pursuant to the laws of the Commonwealth of Puerto Rico with its principal place of business in the island.

17.     Defendant MMM Health Care, LLC (MMM), is a legal entity pursuant created pursuant to the laws of the Commonwealth of Puerto Rico with its principal place of business in the island.

18.    Defendant MMM Healthcare, Inc (MMM), is a corporation incorporated pursuant to the las of the Commonwealth of Puerto Rico with its principal place of business in the island.

19.    Defendant MMM Holdings, Inc. (MMM), is a corporation incorporated pursuant to the las of the Commonwealth of Puerto Rico with its principal place of business in the island.

20.    Defendant MMM Holdings, LLC (MMM), is a legal entity created pursuant to the las of the Commonwealth of Puerto Rico with its principal place of business in the island.

21.    Defendant Castellana Physician Services, LLC (IPA), is a legal entity created pursuant to the las of the Commonwealth of Puerto Rico with its principal place of business in the island.

22.    Defendant Castellana Physician Services, Inc (IPA), is a legal entity created pursuant to the las of the Commonwealth of Puerto Rico with its principal place of business in the island.

23.    Defendant Comprehensive Geriatric Care of San Juan, Inc. (IPA), is a legal entity created pursuant to the las of the Commonwealth of Puerto Rico with its principal place of business in the island.

**III. THE FACTS**

24.    Approximately in the year 2000, *Medicare y Mucho Mas* (MMM) became a medical plan named as MMM. In the year 2007, MMM contract with the Centers for Medicare and Medicaid (CMS) to form part of Medicare Advantage and became an HMO.

25. MMM is authorized in Puerto Rico to provide arrange for, and/or administer the provision of prepaid health care services for Medicare beneficiaries that select it.

26.    MMM subcontracted the MSO and transferred responsibilities, delegated duties, to provides administrative, technological and resource support to MMM and IPA and delegated

manage its provider's network. Through MSO, MMM has subcontracted the IPA's to provide with primary care providers certain professional health care services. Also, MSO is responsible at all times herein material for providing management and administrative support services to the IPA.

27.    Also, MMM contracted MSO to manage the network of providers in general and subcontract the IPA in order to hire the primary providers. MMM transferred responsibilities and delegated duties to MSO.

28.    MMM was an HMO for which plaintiffs Caparra, Policlínica, Del Valle, Torres Flores and Torres Figueroa were primary care providers under the program of Medicare Advantage.

29.    These primaries care providers provided basic Medicare services and supplemental covered services to the Medicare beneficiaries enrollees with MMM, for a fixed per member per month payment in coordination with its IPA.

30.    Approximately on or after the year 2016, plaintiffs Caparra, Policlínica, Del Valle, Torres Flores and Torres Figueroa became providers of primary services for MMM and/or MSO. Dr. Evelyn Matta was a medical provider of service from Caparra. Dr. Salvador Ribot was a medical provider of service from Policlínica.

31.    As of 2021, plaintiffs Caparra, Policlínica, Del Valle, Torres Flores and Torres Figueroa had contracts with different Independent Practice Association (IPA) to provide primary health services to patient's members of the MMM, which has entered into a Medicare Advantage Contract with the Centers for Medicare & Medicaid Services (CMS) as a Health Management Organization. In those contracts MSO and MMM were parties by delegation.

32.     MMM is a Medicare Advantage Organizations (also known as MA Organization). MMM operates a coordinated care plan or a network medical savings account (MSA) plan. MA organizations stand for Medicare Advantage Organizations.

33.     MSO stands for a Management Services Organization. Defendant MSO is a business organization that provides administrative, technological and resource support to MMM and IPA.

34.     Due to MSO and/or IPAs acts or omissions, plaintiffs were not provided or a system was not arranged for the provision of basic health services for a basic health services payment as required under 42 C.F.R. § 417.104 on or after April 3, 2023; causing the violation to that regulation.

35.     Due to MSO and/or the IPA acts or omissions, plaintiffs were not provided the reasonable participation procedures as required by 42 CFR section 422.202, causing the violation to that regulation.

36.     Plaintiffs Caparra, Policlínica, Del Valle, Torres Flores and Torres Figueroa were providing primary care services to the Medicare Advantage patients that form part of MMM Health Plan at the time of the legal violations took place, as describe in this complaint.

37.     Prior to 2021, during 2021 and/or until April 28, 2023, Plaintiffs were paid via "capitation". Capitation is, according to CMS, "[a] way of paying health care providers or organizations in which they receive a predictable, upfront, set amount of money to cover the predicted cost of all or some of the health care services for a specific patient over a certain period of time."[3]. Payment via capitation was based on the Medicare beneficiary's risk and paid on a periodic basis (for example every month).

---

[3] https://www.cms.gov/priorities/innovation/key-concepts/capitation-and-pre-payment

38. On April 26, 2023, representatives of IPA Castellana met to notify Caparra a determination made by the MSO, a subcontractor of MMM, that modified the compensation mechanism since May 4, 2023 for this primary care provider corporation CAPARRA. The notification was dated on April 3, 2023, and it was delivered on April 26, 2023.  The notification had only six (6) days period, because it was effective on May 4, 2023. The notification not complied with the thirty (30) days period required.

39.    On April 26, 2023, Caparra received for the first time a letter from MSO stating that the payment would be changed from capitation to fee for service. That letter was taken to the office of Caparra by employees of the IPA Castellana. That letter did not provide a thirty-day period as required by the contract undersigned by MSO and Caparra, This letter was notified on April 26, 2023, and the change to a fee for service was effective on May 4, 2023. The letter had a fee Schedule A, which was made form part of the letter. The fee schedule A was not paid on a periodic basis because it considered the dates the services were provided, the fee schedule was not fixed because it considered the frequency. Also, it was not fixed because it considered the extent and/or it was not fixed because it considered the kind of basic health services actually furnished. Hence, the fee scheduled A described a form of payment of fee for service.  The letter received by Caparra did not explain why this change was instituted nor did the letter include the notice of appeals process for this decision. The letter did not state the notice of the rules of participation, neither a notice of the appeal rights. Caparra was never notified of the written notice in the letter that was received on April 26, 2023, of a reasonable procedure regarding the rules of participation related to the change of payment, and other rules directly related to participation decisions. The written notice required to state the rules of participation, and that the appeal process and/or as a manner to participate. That is part of the

rules of participation. Furthermore, the process provided in the letter was to call to a telephone number if Caparra had doubts; does are not the rules of participation neither a notice of the appeal rights. It did not provide a process that allows Caparra to present information and its views on the decision regarding the letter received April 26, 2023. The MSO and IPA did not comply with the process and facts stated in this paragraph.

40.    Caparra requested from MMM an appeal process on May 1, 2023 related to the letter received on April 26, 2023. That procedure was done because the letter received on April 26, 2023 did not state the rules of participation and the appeal rights within that letter, written notice was not provided of those issues. A written notice of participation decisions that was adverse to Caparra, was never received regarding the appeal filed on May 1, 2023. The letter received on April 26, 2023, only stated to communicate to the MSO with no notice of the appeal rights and the written notice of the rules of participation directly related to participation decision; neither a reasonable process was in place between MSO, MMM and Caparra. The letter received from MSO did not contemplate the existence of an appeal right. The letter did not explain in a written form the appeal rights at all. The letter did not provide a written notice as to why this change was instituted. Regarding the determination made on November 11, 2024 the same issues were raised. That violates 42 C.F.R. § 417.104 and 42 C.F.R. § 422.202, as well as Plaintiffs due process rights. The MSO and the IPA did not comply with the due process established in said CFR.

41. Sometime before April 28, 2023, MSO decided to modify Dr. Del Valle's contract with its IPA regarding the payment in capitation. The MSO, IPA and the MA organizations did not comply with the process and facts stated in this paragraph. About two weeks after April 28, 2023, Dr. Del Valle received a letter from MSO stating that there would be a changed of

payment from capitation to fee for service. The letter did not explain why this change was instituted nor did the letter include a notification of the appeals process for this decision. The letter had a fee Schedule A, which was made form part of the letter. The fee schedule A was not paid on a periodic basis because it considered the dates the services were provided, the fee schedule was not fixed because it considered the frequency, it was not fixed because it considered the extent and/or it was not fixed because it considered the kind of basic health services actually furnished. The letter described the form of payment of fee for service. The letter received by Dr. Del Valle approximately two weeks after April 28, 2023, only stated to communicate to the MSO by telephone with no notice of the appeal rights and the written notice of the rules of participation. The letter did not provide of a system to present information and their views to the decision, neither a system was in place between MSO, MMM and Dr. Del Valle. The letter did not provide a written notice regarding the rules of participation related to the fact to the change of the payment. The letter received from MSO did not contemplate the existence of an appeal right. The letter did not notice in a written form the appeal rights at all. The letter did not provide a written notice as to why this change was instituted. Regarding the determination made on November 11, 2024 the same issues were raised. That violates 42 C.F.R. § 417.104 and 42 C.F.R. § 422.202, as well as Plaintiffs due process rights. The MA organizations did not comply with the due process established in said CFR.

42. Sometime before April 24, 2023, MSO and/or IPA determined to modify Dr. Torres Flores contract with its IPA regarding the payment in capitation. The MSO, IPA and the MA organizations did not comply with the process and facts stated in this paragraph. About two weeks after April 28, 2023, Dr. Torres Flores received a letter from IPA stating that there would be a changed of payment from capitation to fee for service, and the decision was made

by MSO. The letter did not explain why this change was instituted nor did the letter include a notification of the appeals process for this decision. The letter had a fee Schedule A, which was made form part of the letter. The fee schedule A was not paid on a periodic basis because it considered the dates the services were provided, the fee schedule was not fixed because it considered the frequency, it was not fixed because it considered the extent and/or it was not fixed because it considered the kind of basic health services actually furnished. The letter described the form of payment of fee for service. The letter received by Dr. Torres Flores approximately two weeks after April 28, 2023, only stated to communicate to the MSO by telephone with no notice of the appeal rights and the written notice of the rules of participation. The letter did not provide of a system to present information and their views to the decision, neither a system was in place between MSO, MMM and Dr. Torres Flores. The letter did not provide a written notice regarding the rules of participation related to the fact to the change of the payment. The letter received from MSO did not contemplate not even the existence of an appeal right. The letter did not notice in a written form the appeal rights at all. The letter did not provide a written notice as to why this change was instituted. Regarding the determination made on November 11, 2024 the same issues were raised. That violates 42 C.F.R. § 417.104 and 42 C.F.R. § 422.202, as well as Plaintiffs due process rights. The MA organizations did not comply with the due process established in said CFR.

43.     Sometime before July 6, 2023, MSO determined to modify Dr. Torres Figueroa payment of capitation. The MSO and IPA did not comply with the process and facts stated in this paragraph. Also, on July 6, 2023, Dr. Torres Figueroa was notified by a letter from MSO that payment method with MSO will be change from capitation to a fee for service. The letter did not explain why this change was instituted nor did the letter include a notification of the

appeals process for this decision. The letter referred to a Fee Schedule A. The Fee Schedule A was not paid on a periodic basis because it considered the dates the services were provided, the fee schedule was not fixed because it considered the frequency, it was not fixed because it considered the extent and/or it was not fixed because it considered the kind of basic health services actually furnished. The letter described the form of payment of fee for service.  The letter received on July 6, 2023, by Dr. Torres Figueroa, only stated to communicate to the MSO by telephone with no notice of the appeal rights and the written notice of the rules of participation. The letter did not provide of a system to present information and their views to the decision, neither a system was in place between MSO, MMM and Dr. Torres Figueroa. The letter did not provide a written notice regarding the rules of participation related to the fact to the change of the payment. The letter received from MSO did not contemplate the existence of an appeal right. The letter did not notice in a written form the appeal rights at all. The letter did not provide a written notice as to why this change was instituted. Regarding the determination made on November 11, 2024 the same issues were raised. That violates 42 C.F.R. § 417.104 and 42 C.F.R. § 422.202, as well as Plaintiffs due process rights. The MA organizations did not comply with the due process established in said CFR.

44.    Sometime before April 28, 2023, MSO determined to modify Policlínica's contract with its IPA regarding the payment of capitation. The MSO, IPA and the MA organizations did not comply with the process and facts stated in this paragraph. Also, about two to three weeks after April 28, 2023, Policlínica received a letter that the payment method with MSO will be change from capitation to a fee for service. The letter did not explain why this change was instituted nor did the letter include a notification of the appeals process for this decision. The letter referred to a Fee Schedule A. The Fee Schedule A was not paid on a

periodic basis because it considered the dates the services were provided, the fee schedule was not fixed because it considered the frequency, it was not fixed because it considered the extent and/or it was not fixed because it considered the kind of basic health services actually furnished. The letter described the form of payment of fee for service. The letter received about two to three weeks after April 28, 2023, by Policlinica, only stated to communicate to the IPA by telephone with no notice of the appeal rights and the written notice of the rules of participation. The letter did not provide of a system to present information and their views to the decision, neither a system was in place between MSO, MMM and Dr. Ribot. The letter did not provide a written notice regarding the rules of participation related to the fact to the change of the payment. The letter received from IPA did not contemplate even the existence of an appeal right. The letter did not notice in a written form the appeal rights at all. The letter did not provide a written notice as to why this change was instituted. Regarding the determination made on November 11, 2024 the same issues were raised. That violates 42 C.F.R. § 417.104 and 42 C.F.R. § 422.202, as well as Plaintiffs due process rights. The MA organizations did not comply with the due process established by said CFR.

45.    On April 25, 2024, the plaintiffs coordinated with the defendants a good fate meeting to inform defendants the violations claimed in this complaint and inform the damages that exists in this moment prior to present the judicial claim.


IV. FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT


46.    Plaintiffs adopt by reference paragraphs 1-45 of the Complaint.

47.    The 42 C.F.R § 422.202 states - **Participation procedures that:**

"(a) *Notice and appeal rights.* An MA organization that operates a coordinated care plan or network MSA plan must provide for the participation of individual physicians, and the management and members of groups of physicians, through reasonable procedures that include the following:

(1) Written notice of rules of participation including terms of payment, credentialing, and other rules directly related to participation decisions.

(2) Written notice of material changes in participation rules before the changes are put into effect.

(3) Written notice of participation decisions that are adverse to physicians.

(4) A process for appealing adverse participation procedures, including the right of physicians to present information and their views on the decision. In the case of termination or suspension of a provider contract by the MA organization, this process must conform to the rules in § 422.202(d).

(b) *Consultation.* The MA organization must establish a formal mechanism to consult with the physicians who have agreed to provide services under the MA plan offered by the organization, regarding the organization's medical policy, quality improvement programs and medical management procedures and ensure that the following standards are met:

(1) Practice guidelines and utilization management guidelines—

(i) Are based on current evidence in widely used treatment guidelines or clinical literature;

(ii) Consider the needs of the enrolled population;

(iii) Are developed in consultation with contracting physicians; and

(iv) Are reviewed and updated periodically.

(2) The guidelines are communicated to providers and, as appropriate, to enrollees.

(3) Decisions with respect to utilization management, enrollee education, coverage of services, and other areas in which the guidelines apply are consistent with the guidelines.

(c) *Subcontracted groups.* An MA organization that operates an MA plan through subcontracted physician groups must provide that the participation procedures in this section apply equally to physicians within those subcontracted groups.

(d) *Suspension or termination of contract.* An MA organization that operates a coordinated care plan or network MSA plan providing benefits through contracting providers must meet the following requirements:

(1) *Notice to physician.* An MA organization that suspends or terminates an agreement under which the physician provides services to MA plan enrollees must give the affected individual written notice of the following:

(i) The reasons for the action, including, if relevant, the standards and profiling data used to evaluate the physician and the numbers and mix of physicians needed by the MA organization.

(ii) The affected physician's right to appeal the action and the process and timing for requesting a hearing.

(2) *Composition of hearing panel.* The MA organization must ensure that the majority of the hearing panel members are peers of the affected physician.

(3) **Notice to licensing or disciplinary bodies.** An MA organization that suspends or terminates a contract with a physician because of deficiencies in the quality of care must give written notice of that action to licensing or disciplinary bodies or to other appropriate authorities.

(4) **Timeframes.** An MA organization and a contracting provider must provide at least 60 days written notice to each other before terminating the contract without cause.

48.      This section requires that if a Medicare Advantage organization wants to modify or cancel a contract with the supplier of medical services, it must notify said supplier of a)- its appeals rights, b)- reasons for cancellation and 3)- a sixty-day appeals period for said cancellation. This appeals right, the appeals mechanism, appeals period was not mentioned or the process explained in the letter. The letters sent to the Plaintiffs Caparra, Policlinica Dr Ribot, Dr Del Valle Dr. Amilcar Torres and Dr. Jose Torres, and did not contain this information required by 42 CFR section 422.202. The MSO and the IPAs violated Plaintiffs due process rights that is guarantee were to the law statutory process. The due pross have its origin in the Fifth and Fourteenth Amendments to the Constitution of the United States of America that requiring proper notification as part of the due process in the procedural phase. All of these violations making the actuation of the Defendants will be void, null, and futile.

49.      The case of *Fairfield County Medical Association, et. Als. V. United Healthcare of New England*,   985 F.Supp.2d at page 270, states:

> Instead, the Medicare Act requires that states do not interfere with the scope, implementation, or performance of Medicare plans offered by private organizations. **It does not, however, preempt courts from reviewing agreements between physicians/providers and private Medicare plan providers to enforce the procedural rights set forth in those agreements and in the Medicare regulations governing physician termination. 42 C.F.R. § 422.202(d).** Instead, the Medicare Act's procedural requirements for terminations of physicians without cause from Plan C programs should be read as providing a baseline level of procedural protection for physicians. These provisions are complementary to United's contracts with individual physicians, and they do not supersede or displace stronger protections set forth in United's individual Physician Contracts.

50.    See Also, *Fairfield County Medical Association, et. Als. V. United Healthcare of New England*, 557 F. App'x 53 (2d Cir. 2014). Hence, this court has jurisdiction to entertain the issues raised under 42 C.F.R § 422.202 due to the violations of due process.

51.    Due to the violations committed by MSO and IPA, plaintiffs due process rights guarantee under 42 CFR section 422.202 and under constitution were breached, and it caused plaintiffs 'damages. A request is made that the proceedings that violated 42 CFR section 422.202 should be declared null, void and futile.

52.    The 42 C.F.R. § 417.104(a) states over the ***Basic health services payment.***:

"*Each* HMO **must** *provide or* arrange for *the provision of* basic health services *for a* basic health services payment *that:*
*(1) Is to be paid on a periodic basis without regard to the dates these* services *are provided;*
*(2) Is fixed without regard to the frequency, extent, or kind of* basic health services *actually furnished;*
*(3) Except as provided in* paragraph (c) *of this section, is fixed under a* community rating system, *as described in* paragraph (b) *of this section; and*
*(4) May be supplemented by nominal copayments which may be required for the provision of specific* basic health services. *Each* HMO *may establish one or more copayment options calculated on the basis of a* community rating system.
*(i) An* HMO *may not impose copayment charges that exceed 50 percent of the total cost of providing any single* service *to its enrollees, nor in the aggregate more than 20 percent of the total cost of providing all* basic health services.
*(ii) To insure that copayments are not a barrier to the utilization of health* services *or enrollment in the* HMO, *an* HMO *may not impose copayment charges on any* subscriber *(or* enrollees *covered by the* subscriber's *contract with the HMO) in any calendar year, when the copayments made by the* subscriber *(or* enrollees*) in that calendar year total 200 percent of the total annual premium cost which that* subscriber *(or* enrollees*) would be required to pay if he (or they) were enrolled under an option with no copayments. This limitation applies only if the* subscriber *(or* enrollees*) demonstrates that copayments in that amount have been paid in that year*".

53.    This section of the CFR provides that payment to the physicians be via capitation, especially once this system of payment is commenced by the HMO. This was the

payment received by Plaintiffs before Defendants decided to change it ton fee for service. This violation of the CFR has caused Plaintiffs the damages alleged in the Damages section, *infra*.

54.    In addition, primary care physicians such as Plaintiffs are to be paid via capitation for they keeps costs to the Medicare system down by not having patients be sent to subspecialists and reduces the need for expensive tests and procedures such as CT Scans and sonograms. Hence, capitation payment serves the patients and reduces costs to the Medicare system.

55. It is clear from the face of the notice that the mechanism intended by the MSO or the IPAs is not permitted as a remedy for primary care providers. The absence of adequate notice of the appeal mechanisms available to primary care providers did not permit primary care providers to challenge the determination depriving them of proprietary rights.

56.    This Honorable District Court is authorized pursuant to 28 U.S.C. §§ 2201-2202 to issue a declaratory judgment to "*declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought*." Hence, Plaintiffs have a right to and request a declaration from this Honorable Court that: a. The defendants violated Title 42 of the Code of Federal Regulations, § 422.202 and failed to comply with the due process established therein by not reporting the available appeal mechanism; b. The defendants' actions were contrary to the law because everything that was done is void; the plaintiffs have the right to restitution of what was not paid until the plaintiffs report the available appeal mechanism, or the court examines and decides on the violated section of the fee for services compensation.

57. The Section 2 – Interpretation, of Chapter XII - MISCELLANEOUS of the Services Agreement between Independent Practice Association and Primary Care Physicians **grants**

**automatic jurisdiction for this judicial forum to interpret whether determinations that expressly violate federal laws breach the contract**.

58. We request this Honorable Court to review and declare the fee-for-service payment as a mechanism of economic compensation for primary providers selected by Medicare beneficiaries in MMM to be incompatible with the enabling law of the Medicare Program. The compensation determination made by MSO must be declared contrary to Medicare statutes by this honorable court.

59. The District Court in Fairfield County Medical Association v. United HealthCare of New England, 985 F.Supp.2d, continues at page 269 and states that neither the text of the Medicare Act, nor the Centers for Medicare and Medicaid regulations, require that physicians exhaust any administrative process prior to bringing an action to enforce a contract between a Medicare insurer and a physician/provider. Because no administrative adjudication mechanism exists for the claims made in the case, plaintiffs have not failed to exhaust administrative remedies.

V. SECOND CAUSE OF ACTION – RESTITUTION BY ORDINARY CIVIL ACTION

60. All allegations contained in paragraphs 1 through 59 are adopted by reference.

61. The compensation change determined and implemented by the MSO had the effect of depriving primary providers of federal funds administered by CMS and paid by MMM pursuant to particular services to the federal program.

62. A **primary provider acquires a proprietary right** over the federal funds obtained from the capitated **compensation arising from a premium from a Medicare beneficiary** who has chosen him as his primary care physician or gatekeeper. When a beneficiary selects that

primary provider within the network available through the HMO, he exercises a sacred right within the program, which is the free selection of his primary care physician. As long as the primary provider is in compliance and qualified with the program requirements, the deprivation of those funds thus obtained is not permitted without the guarantee of due process of law.

63. As we have seen, these capitated funds contain a special compensation aimed at sharing a level of risk in exchange for the management of the health of the Medicare Program beneficiary by that primary provider. A change in the compensation mechanism has the effect of depriving you of risk funds and compensating you only for the time you are in contact with the beneficiary while you continue to perform functions and represent yourself to the beneficiaries and the program as a selectable gatekeeper on the network.

64. The risk management functions continue for that provider without being compensated. When the representatives of the IPA Castellana informed the appearing primary providers of the notification of the determination that from now on it would be the MSO that would receive the benefits arising from the risk control by the primary provider, a serious conflict arose for the Program. The MSO displaced the primary providers so that they would receive the capitated compensation while displacing that primary provider without complying with the required statutory due process.

65. The new fee for services compensation allowed the MSO to deprive the appearing primary providers of a portion of their capitated compensation to pass it into their hands without adequate notification of the reasons or grounds for the change and without providing an appeal mechanism to challenge the decision adopted. In some cases, the act was aggravated because they did not comply with the terms required to announce the change or the legal authority to be able to make the change in the MMM Plan network was not informed.

66. Having determined that the Medicare law limited the conduct or actions of the MSO and that all actions by that corporation are void, the right to restitution arises. Therefore, we must determine for each primary provider what the effect of the illegal change was on its compensation. This direct economic effect or impact is obtained as a result of the monthly capitation received at the time of the change and the payment recovered through the fee for service compensation.

67. The IPA Castellana, the MSO and MMM are responsible for **returning** to the primary providers the **uncompensated difference for each month** in which the illegal action extended. A first stage arises from the fact that the absence of adequate notification did not allow for an appeal mechanism to question the change and constitutes a completed act. A second stage arises when the appeal mechanism or the court determines that the fee for services compensation mechanism was not permitted under the law for the services of the primary providers.

68. and the IPAs has the effect of incorporating as a right the loss of the performance that this differential would have achieved in the hands of the primary supplier and also the negative effect of the inflationary process. The experts of the primary suppliers have identified restitution to this moment December 312, 2024, to Caparra, to Policlinica, to Del Valle, to Torres Figueroa and to Torres Flores.

69. The potential others restitutions of continuing the illegal application of the compensation mechanism to these primary supplier physicians since January 1, 2025 are estimated for Caparra, to Policlinica, to Del Valle, to Torres Figueroa and to Torres Flores.

70. The change was not limited to reducing monthly compensation, but also deprived them of other programmatic benefits for functions that they continued to perform. From the

services of primary providers, made invisible as a result of the segmentation of capitated services, are transferred to the administration of the MSO, other surpluses or profits arise that are distributed annually by the IPA or the Plan. (Hospital services, complementary and specialist services, medications and others) With the change, the PR MSO also keeps any surplus.

71. The primary providers request under this civil action the compensation of the capitation portions not received due to failure to comply with due process of law until the filing of this appeal and that if it is determined that the fee for services mechanism is not permitted to compensate the primary providers, it will be computed from the date of the determination with a penalty of three years for acting outside the law.

## VI. DAMAGES REQUESTED DUE TO THE BREACH OF LEGAL DUTIES STATED IN THIS COMPLAINT

72. Defendants' acts and omissions as described above have caused damages to Plaintiffs. Their acts and omissions are in violation of Article 1536 of the Puerto Rico Civil Code, 2020 Edition (the Code), 31 L.P.R.A. § 10801 and Article 1540 of the Code, 31 L.P.R.A. § 10805. Defendants and the IPA's had the duty pursuant 42 C.F.R. § 417.104(a) to pay Plaintiffs Caparra, Policlínica, Torres Flores, Torres Figueroa and Del Valle via capitation and changing payment to fee for service that violated that regulation reduced their income substantially as shown *infra*. Their actions are those of a joint tortfeaser. In addition, Defendants' acts and omissions caused Plaintiffs Caparra and Policlínica to reduce the bonus

73. In addition, Defendants and the IPAs had the duty to provide Plaintiffs Caparra, Policlínica, Torres Flores, Torres Figueroa and Del Valle the due process provided by 42 C.F.R. § 422.202 as described *supra* but did not do so and actually conspired to deprive these persons of their statutory rights. In addition, this deprivation of these Plaintiffs statutory due

process rights caused Caparra and Policlínica to reduce the bonuses they gave Matta and Ribot. All these acts and omissions caused Plaintiffs the damages alleged, *infra*.

74.   Plaintiff Caparra's contract payments with its IPA were illegally changed from capitation to fee for service which breach 42 CFR 417.104, due the acts and omissions of Defendants and its IPA caused damages to Caparra and Dr. Evelyn Matta. These damages as of loss of past and future income are at least $100 million since Dr. Matta is only 52 years old at the time of the tortious actions by defendants and could continue working for Caparra well past age 70 given the medical crisis in Puerto Rico. Also, Caparra had a loss of Goodwill, and lost of business opportunities, and loss of income. Dr. Matta had emotional damages, lost of income and damages to her reputation. Between Caparra and Dr. Evelyn Matta the damages requested are over $130,000,000.00.   All of those damages are also requested due to the violation of the due process claimed in this complaint; and those damages were caused due to acts and omissions of the defendants.

75.  Plaintiff Del Valle's contract payments with its IPA was illegally changed from capitation to fee for service by the acts and omissions of Defendants and its IPA caused him damages. These damages as of loss of past and future income is no less than $15,000,000. In addition, Dr. Del Valle has suffered great pain and suffering and damages to his reputation due to Defendants acts and omissions. His damages for emotional pain and suffering are no less than $1,000,000. All of those damages are also requested due to the violation of the due process claimed in this complaint; and those damages were caused due to acts and omissions of the defendants.

76.  Plaintiff Policlínica's contract payments with its IPA was illegally changed from capitation to fee for service by the acts and omissions of Defendants and its IPA. This caused it

damages. These damages as of loss of past and future income is no less than $7,500,000. All of those damages are also requested due to the violation of the due process claimed in this complaint; and those damages were caused due to acts and omissions of the defendants.. .  All of those damages are also requested due to the violation of the due process claimed in this complaint; and those damages were caused due to acts and omissions of the defendants. Furthermore, those damages are requested due to the termination of the contract of the doctor Salvador Ribot with defendants, and violations to 42 CFR 422.202 took place as describe in this complaint.

77. Plaintiff Torres Figueroa contract payments with its IPA was illegally changed from capitation to fee for service by the acts and omissions of Defendants and its IPA and caused him damages. These damages as of loss of past and future income is no less than $3,000,000. In addition, Dr. Torres Figueroa has suffered great pain and suffering and loss to his reputation due to Defendants acts and omissions. His damages for emotional pain and suffering and loss to his reputation are no less than $1,000,000. All of those damages are also requested due to the violation of the due process claimed in this complaint; and those damages were caused due to acts and omissions of the defendants. Furthermore, those damages are requested due to the termination of the contract of the doctor Torres Figueroa with defendants, and violations to 42 CFR 422.202 took place as describe in this complaint.

78. Plaintiff Torres Flores contract payments with its IPA was illegally changed from capitation to fee for service by the acts and omissions of Defendants and its IPA and caused him damages. These damages as of loss of past and future income is no less than $4,000,000. In addition, Dr. Torres Flores has suffered great pain and suffering due to Defendants' acts and omissions. His damages for emotional pain and suffering and loss of his reputation are no less

than $1,000,000.00. All of those damages are also requested due to the violation of the due process claimed in this complaint; and those damages were caused due to acts and omissions of the defendants. Furthermore, those damages are requested due to the termination of the contract of the doctor Torres Flores with defendants, and violations to 42 CFR 422.202 took place as describe in this complaint.

79. Dr. Evelyn Matta is the president of Caparra. The illegal change of payment form and the total disregard for the due process that Caparra was not provided, affected the bonuses she received from Caparra. This reduction of income was at least $200,000 per year. In addition, she has suffered anguish and mental pain and damages to her reputation due to Defendants' actions. Her damages for emotional pain and suffering and loss of reputation are calculated to be no less than $1,000,000.00. All of that damages are also requested due to the violation of the due process claimed in this complaint; and those damages were caused due to acts and omissions of the defendants.

80. Dr. Salvador Ribot is the president of Policlínica. The illegal change of payment form and the total disregard for the due process that Caparra was not provided, affected the bonuses he received from Policlínica. This reduction of income was at least $1,000,000.00 per year. In addition, he has suffered anguish and mental pain and loss of reputation due to Defendants' actions. His damages for emotional pain and suffering and loss of reputation and loss of reputation are calculated to be no less than $1,000,000. All of those damages are also requested due to the violation of the due process claimed in this complaint; and those damages were caused due to acts and omissions of the defendants. Furthermore, those damages are requested due to the termination of the contract of the doctor Salvador Ribot with defendants, and violations to 42 CFR 422.202 took place as describe in this complaint.

WHEREFORE: Plaintiffs respectfully request from the Honorable Court that it enter judgment against defendants, 1- - declare that the defendants' acts and omissions are null, void, and contrary to federal regulations and due process rights, determine that the defendants failed to provide reasonable procedures to comply with 42 CFR 422.202; 2- declare that the due process rights of the plaintiffs Caparra, Policlínica, Dr. Del Valle, Dr. Torres Flores, Dr. Torres Figueroa and; 3- order a new notification as required by 42 CFR 422.202 to the plaintiffs; 4- in the alternative to the above, examine the section The 42 C.F.R. § 417.104(a) states and determine that it limits the payment of fees for service to primary care providers; 5- issue a judgment against the defendants for an amount not less than $200,000,000.00; 6- order the defendants to pay costs and attorneys' fees

Respectfully submitted on this 9th day of January, 2025.

/s/ John E. Mudd
John E. Mudd
Bar Number: 201102
Attorney for Plaintiffs
LAW OFFICES JOHN E. MUDD
P. O. BOX 194134
SAN JUAN, P.R. 00919
(787)413-1673
 johnmuddlaw@gmail.com

/s/Glenn Carl James
Glenn Carl James
USDC- 207,706
JAMES LAW OFFICES
PMB 501
1353 Ave. Luis Vigoreaux
GUAYNABO, PR 00966-2700
Tel. (787)616-2885
E-mail:
glenncarljameslawoffices@gmail.com