**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Dr. Evelyn Matta Fontanet, et al., <br><br>         Plaintiffs, <br><br>              v. <br><br> MSO of Puerto Rico, LLC; et al., <br><br>         Defendants. | **Civ. No. 25-01018(GMM)** |

<u>**OPINION AND ORDER**</u>

Before the Court is Plaintiffs'[1] *Motion Under Rule 59(e) to Alter or Amend a Judgment* ("Plaintiffs' Motion to Amend Judgment") at Docket No. 75. Defendants[2] filed *Defendants' Opposition to Plaintiffs' Motion Under Rule 59(e) to Alter or Amend a Judgment* ("Opposition") at Docket No. 88. In turn, Plaintiffs filed its *Reply to the Opposition to "Motion Under Rule 59(e) to Alter or Amend a Judgment"* ("Reply") at Docket No. 92.

---

[1] Plaintiffs are Dr. Evelyn Matta Fontanet ("Dr. Matta"); Caparra Internal Medicine Service Group, LLC. ("Caparra"); Dr. Salvador Ribot and his conjugal partnership with Amparo Díaz Ramos ("Dr. Ribot"); Policlínica Dr. Salvador Ribot Ruiz, Inc. ("Policlínica"); Dr. Pedro F. del Valle and his conjugal partnership with Vanessa Díaz Paoli ("Dr. del Valle"); Dr. José A. Torres Flores and his conjugal partnership with Ana Angeles García Maldonado ("Dr. Torres Flores"); and Dr. Almilcar Torres Figueroa and his conjugal partnership with Sandra Quijano ("Dr. Torres Figueroa").

[2] The Opposition was filed by Defendants MSO of Puerto Rico, LLC ("MSO"); MSO of Puerto Rico Inc. ("MSO"); MSO Holdings, Inc.; MSO Holdings, LLC ("MSO"); MMM Healthcare, Inc. ("MMM"); MMM Healthcare, LLC. ("MMM"); MMM Holdings, LLC ("MMM"); MMM Holdings, Inc. ("MMM"); Castellana Physician Services, LLC; Castellana Physician Services, Inc. ("Castellana") - collectively ("Defendants"). The remaining defendant in this action, Comprehensive Geriatric Care of San Juan, Inc., did not join the Opposition.

Civil No. 25-01018 (GMM)
Page -2-

Before the Court is also *Defendants' Motion to Amend or Alter Judgment under Rule 59(e)* ("Defendants' Motion to Amend Judgment") at Docket No. 81.[3] Plaintiffs filed *Request for Defendants' Motion Based on Rule 59(e) to be Dismissed* at Docket No. 85. In turn, Defendants filed *Reply to Plaintiffs' Opposition to Defendants' Motion to Amend or Alter Judgment Under Rule 59(e)* at Docket No. 95.

For the reasons explained below, Plaintiffs' Motion to Amend Judgment is **DENIED**, and Defendants' Motion to Amend Judgment is **GRANTED IN PART**.

## I.   <u>RELEVANT PROCEDURAL HISTORY</u>

The *Complaint* filed in this case, which according to Plaintiffs is brought, among others, under the Services Agreement between Independent Practice Associations ("IPAs") and Primary Care Physician ("PCPs")[4], alleges, in essence, that MSO and the IPAs violated federal regulations 42 C.F.R. § 417.104 and 42 CFR section 422.202, as well as their due process rights, when they changed the method of payment to the Primary Care Providers outlined in the PCP Agreements from a "capitation" method to a "fee-for-service" method without providing adequate notice and

---

[3] The Motion was filed by all Defendants, except Comprehensive Geriatric Care of San Juan, Inc.
[4] *See* (Docket No. 1 at 2).

appeals procedures. (Docket No. 1 at ¶¶ 37-44). In consequence, Plaintiffs request the Court issue declaratory judgment that:

a.  The defendants violated Title 42 of the Code of Federal Regulations, § 422.202 and failed to comply with the due process established therein by not reporting the available appeal mechanism;

b.  The defendants' actions were contrary to the law because everything that was done is void; the plaintiffs have the right to restitution of what was not paid until the plaintiffs report the available appeal mechanism, or the court examines and decides on the violated section of the fee for services compensation.

(Docket No. 1 at 17). It also requests restitution for the monthly uncompensated difference in wages that should have been provided to primary care providers, but for the allegedly wrongful change in the compensation structure of those physicians by Defendants. *See* (Id. at 18-20). Plaintiffs also request damages in the form of past and future income, of which they have been and will be deprived "due to the acts and omissions of Defendants and its IPA[,]" and in some instances for loss of goodwill, business opportunities, emotional damages, and damages to reputation. *See* (Id. at 22-24)

Plaintiffs also filed a *Motion Under Rule 57* for declaratory relief based on what they refer to as their "appellate claims," requesting a hearing on claims originally brought before the Center for Medicare and Medicaid ("CMS") for Defendants alleged

Civil No. 25-01018 (GMM)
Page -4-

violations of due process, under 42 C.F.R § 422.202, and which
have not been addressed by the agency. *See* (Docket No. 21).
Plaintiffs asked the Court to find that MSO, IPA Castellana, and
IPA Comprehensive Geriatric Care of San Juan, Inc.'s "action
notifying a determination to modify the compensation mechanism to
the MMM primary care providers named in this motion, without
complying with the constitutional requirements and those of title
42 CFR §422.202(d)(1)(i)(II) of federal law, renders said
notification and its determination, with all actions taken
thereafter, null and void," and that "[t]he payment of fees for
service is excluded by 42 CFR §417.104(a)(1)(2) as a mechanism of
economic compensation to primary service providers." (Id. at 17).
Plaintiffs claim that MSO and IPAs must make a new determination
that takes into account compensations allowed by federal statutes.
*See* (Id.).

Defendants, in response, filed a *Motion to Dismiss to Compel
Arbitration* and a *Motion to Compel Arbitration and Joining Motion
to Dismiss and Compel Arbitration Docket 24* ("Motions to Compel
Arbitration"),[5] under the Federal Arbitration Act ("FAA") pursuant
to an arbitration clause contained in the services agreements

---

[5] Defendant Comprehensive Geriatric Care of San Juan, Inc. filed *Motion to
Compel Arbitration and Joining Motion to Dismiss and Compel Arbitration Docket
24* at Docket No. 34, which incorporates the arguments made in the Motion to
Compel but only as to Plaintiff Dr. Torres Figueroa, with whom Comprehensive
has a PCP Agreement with language mirroring those at issue in the Motion to
Compel.

between IPAs and PCPs (collectively, "PCP Agreements"). (Docket Nos. 24; 34).

Plaintiffs filed an *Opposition to Motion to Dismiss to Compel Arbitration* at Docket No. 36. A *Reply to Opposition to Motion to Dismiss to Compel Arbitration* was then filed at Docket No. 51. A *Sur-Reply to Reply to Opposition to Motion to Dismiss to Compel Arbitration* and *Sur-Reply Arguments of the Defendants' Motion of March 4, 2025, and Sur-Reply* were filed at Docket Nos. 58 and 64, respectively.

On March 31, 2025, the Court issued an *Opinion and Order* granting in part the Motions to Compel Arbitration, finding that a valid arbitration clause existed in the PCP Agreements between Plaintiff Primary Care Providers and the IPAs. *See* (Docket No. 72). Because the arbitration clause contained a delegation clause, the Court found that issues of the scope of the mandatory arbitration provision, including questions of procedural arbitrability, were reserved for the arbitrator to determine. *See* (id. at 9-18).

On the other hand, the Court found that whether claims involving nonsignatories to those agreements could be subject to mandatory arbitration was an issue for the Court – and not the arbitrators - to determine. *See* (id. at 18-21). Applying recent First Circuit case law, the Court ultimately held that the

nonsignatories could not compel signatories to arbitrate their claims against them, nor vice versa could a signatory compel a nonsignatory to arbitrate its claims. *See* (Id. at 21-22). Thus, the Court ordered Plaintiffs "to arbitrate the arbitrability of their claims to the extent they are between signatories to the PCP Agreements signatories" and stayed the present case pending completion of arbitration. (Id. at 24).

## II.  LEGAL STANDARD

A party may seek to alter or amend a judgment within 28 days of the entry of judgment under Federal Rule of Civil Procedure 59(e). Rule 59(e) relief is granted sparingly, and only when "they seek to correct manifest errors of law, present newly discovered evidence, or when there is an intervening change in law. *See* Prescott v. Higgins, 538 F.3d 32, 45 (1st Cir. 2008). The First Circuit has clarified that "a manifest error is '[a]n error that is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 195 (1st Cir. 2004) (citing *Black's Law Dictionary* 563 (7th ed. 1999)); *see also* Integrand Assurance Co. v. Everest Reinsurance Co., No. CV 19-1111 (DRD), 2020 WL 2109202, at *1-2 (D.P.R. May 1, 2020).

A motion for reconsideration cannot be used as a vehicle to re-litigate matters previously adjudicated. *See* Biltcliffe

v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014); Nat'l
Metal Finishing Co., Inc. v. Barclays American/Commercial, Inc.,
899 F.2d 119, 123 (1st Cir. 1990) ("The holdings, therefore,
may be construed as stating no more than the proposition that
Rule 59(e) does not allow the losing party to repeat old
arguments previously considered and rejected, or to raise new
legal theories that should have been raised earlier."derar).
Moreover, District Courts are granted "considerable discretion"
in deciding Rule 59(e) motions. Carrero-Ojeda v. Autoridad de
Energía Eléctrica, 755 F.3d 711, 723 (1st Cir. 2014).

### III. ANALYSIS

A.   Plaintiffs' Motion to Amend Judgment

In their Motion to Amend Judgment, Plaintiffs raise four bases
for the Court to amend its *Opinion and Order* and the accompanying
judgment, pursuant to Fed. R. Civ. P 59(e):

> "a)- the judicial claims susceptible to arbitration were not
> adequately identified and their reasonableness established,
> b)- the Section X on voluntary arbitration that existed was
> never transitioned to a binding or obligatory one, c)- the
> court refused to recognize and validate the scope of the
> arbitrability clause contained in the contract, and d)- there
> was an arbitration exclusion clause in the contract that was
> ignored by the court.

(Docket No. 75 at 2) (emphasis eliminated). After evaluating
each of Plaintiffs' claims for amendment, the Court finds that

Civil No. 25-01018 (GMM)
Page -8-

none of these four grounds suffice to grant the modification Plaintiffs request.

### 1. Plaintiffs Entered into a Valid and Enforceable Arbitration Agreement

As explained in the prior *Opinion and Order*, (Docket No. 72), Defendants argue that the Court should compel arbitration, pursuant to the FAA, because Plaintiffs signed PCP Agreements which contain valid Arbitration Clauses that encompass their claims.

It is settled law that to succeed on a motion to compel arbitration, the movant "must demonstrate (1) that a valid agreement to arbitrate exists, (2) that they are entitled to invoke the arbitration clause, (3) that the other party is bound by that clause, and (4) that the claim asserted comes within the clause's scope." Bossé v. N.Y. Life Ins. Co., 992 F.3d 20, 27 (1st Cir. 2021) (cleaned up).

At the first prong of the analysis, the Court found that the PCP agreements were validly entered into. Notably, Plaintiffs did not challenge the validity of the PCP Agreements - and they frequently referred to them in their *Complaint*. *See e.g.*, (Docket No. 1 at ¶¶ 1, 31, 41, 42, 57, 74-80). Hence, Plaintiffs have conceded that they entered into a valid and enforceable arbitration agreement.

    2.   <u>The Delegation of Arbitrability: Incorporation of the AAA arbitration rules</u>

Although Plaintiffs do not dispute the existence of a valid and enforceable agreement between the parties, they argue that Defendants failed to meet several precedent procedures (i.e., preconditions) in the arbitration provision, preventing its invocation under <u>Bossé</u>'s second prong and precluding Plaintiffs from being compelled to arbitrate.

The Court disagreed. The Court previously addressed, and reiterates, that whether Defendants satisfied the conditions precedent to the arbitration clause is a procedural matter. Controversies arising from the procedures that trigger the enforcement of an arbitration agreement are best resolved by the arbitrator in the first instance, not this Court.

"A delegation clause is merely a specialized type of arbitration agreement." <u>Morales-Posada v. Cultural Care, Inc.</u>, 141 F.4th 301, 309 (1st Cir. 2025) (*quoting* <u>New Prime, Inc. v. Oliveira</u>, 586 U.S. 105, 112(2019)). Through a delegation clause, parties "agree to allow the arbitrator to decide both whether a particular dispute is arbitrable as well as the merits of the dispute." <u>Apollo Comput., Inc. v. Berg</u>, 886 F.2d 469, 473 (1st Cir. 1989).

There is "a presumption that courts (not arbitrators) must 'resolve gateway disputes about whether a particular arbitration

Civil No. 25-01018 (GMM)
Page -10-

clause binds parties in a particular case.'" McKenzie v. Brannan, 19 F.4th 8, 17 (1st Cir. 2021) (*quoting* Barbosa v. Midland Credit Mgmt., Inc., 981 F.3d 82, 93 n.13 (1st Cir. 2020)). This presumption may be overcome when "there is a clear and unmistakable delegation of arbitrability issues" by a valid arbitration agreement. Bossé, 992 F.3d at 28.

Here, the valid PCP Agreements contain dispute resolution provisions under Section X, titled DISPUTE RESOLUTION ("Arbitration Clauses") - specifically, under Sections 10.1 to 10.2.9, which set forth the procedures to resolve any differences or disputes the parties may have with respect to the agreement through mediation and arbitration. Particularly, Section 10.2.3 states in relevant part that "the Dispute shall be submitted to binding confidential arbitration in accordance with the Commercial Rules of the American Arbitration Association (AAA) within sixty (60) days of the date of IPA's final written decision or of the date of lapse of the ninety (90) days." (Docket No. 65-2 at 28-29) (emphasis added). Moreover, Section 10.2.4 clearly indicates that "[b]inding arbitration is the exclusive remedy of IPA and PCP for *all disputes arising out of, relating to, or in any way connected to this Agreement or the relationship between IPA and PCP*." (Id. at 29) (emphasis added).

Civil No. 25-01018 (GMM)
Page -11-

In addition, the Commercial Rules of the American Arbitration Association ("AAA Rules") state that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Rule 7(a), *Commercial Rules and Mediation Procedures*, Am. Arb. Ass'n(2013). Thus, it is unmistakable that, by signing the agreement in controversy, the parties to the PCP Agreements delegated both procedural and substantive issues of arbitrability to the arbitrator. *See* Bossé, 992 F.3d at 29 ("Incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability issues to the arbitrator").

Therefore, there is no legal basis to alter or amend the Court's judgment at Bossé's second prong. *See* (Docket No. 72 at 13-15); Awuah v. Coverall N. Am., Inc., 554 F.3d 7, 11 (1st Cir. 2009); Exothermics, Inc. v. Ernst & Young U.S. LLP, No. 24-CV-00290-LM, 2025 WL 417877 (D.N.H. Feb. 6, 2025)).

3. The Arbitrator, not the Court, Should Decide Whether the Preconditions to Arbitration Have Been Met

The Court's *Opinion and Order* ruled that Section X of the PCP Agreements contained conditions precedent to binding arbitration. *See* (Docket No. 72 at 16-19). The Court further concluded that a determination as to whether these conditions were met – and thus

Civil No. 25-01018 (GMM)
Page -12-

triggered the binding Arbitration Clauses - was a matter of procedural arbitrability to be assessed by the arbitrator, not by the Court. (Id.) (*citing* Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) ("'[P]rocedural' questions," such as whether prerequisite steps to arbitration were completed, "are presumptively not for the judge, but for an arbitrator, to decide.") (emphasis and internal quotations omitted); Fantastic Sams Franchise Corp. v. FSRO Ass'n Ltd.*,* 683 F.3d 18, 25 (1st Cir. 2012); Union Independiente de Trabajadores de la Cerverceria India v. Cerveceria India, Inc., 994 F. Supp. 2d 205, 212 (D.P.R. 2014); Cutler Assocs., Inc. v. Palace Constr., LLC, 132 F. Supp. 3d 191, 198 (D. Mass. 2015))). *See also* GPS Int'l Techs., Inc., Pl. v. Verizon Commc's, Inc., No. 24-CV-07758 (ALC), 2025 WL 2776095, at *4 (S.D.N.Y. Sept. 30, 2025) (*citing* John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557-59 (1964) ("Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.")).

This doctrine continues to be valid case law - and yet Plaintiffs have failed to establish, or even reference, the existence of a manifest error of law, newly discovered evidence, or an intervening change that would properly move this Court to

Civil No. 25-01018 (GMM)
Page -13-

amend or alter its previous ruling. Therefore, the Court need not determine whether Defendants adhered to the conditions precedent in the Arbitration Clauses before referring this matter to arbitration.[6]

4.    <u>Summary Trial</u>

Finally, Plaintiffs argue that the Court erred by not conducting a "summary trial," under Section 4 of the FAA to resolve alleged factual disputes about the arbitrability of their claims. *See* (Docket No. 75 at 27-28).

The FAA requires a summary trial only when there is a genuine issue of material fact regarding the making of the arbitration agreement or the parties' obligation to arbitrate. If no such genuine dispute exists, the Court may decide the motion to compel arbitration as a matter of law. *See* (Docket No. 72 at 6-7, 23) (*citing* <u>Air-Con, Inc. v. Daikin Applied Latin Am., LLC</u>, 21 F.4th 168, 175-76 (1st Cir. 2021)). Notably, to determine whether a matter is arbitrable is a matter of contract interpretation, and contract interpretation is a matter of law. <u>Combined Energies v.</u>

---

[6]In addition, Plaintiffs argue that the Court failed to consider whether their claims against Defendants were barred from arbitration based on what they refer to as the "exclusion clause" in the PCP Agreements. The Court has already noted that "because the parties clearly and unmistakably delegated questions of arbitrability to the arbitrator (by incorporating the AAA Commercial Rules), the effect and interpretation of any such exclusion is itself a question of arbitrability for the arbitrator—not the Court—to decide." (Docket No. 88 at 15 (*citing* Docket No. 72 at 14-15). Thus, the Plaintiffs' failure to identify any manifest error of law or intervening change in controlling law leaves no reason for the Court to revisit its previous determination.

CCI, Inc., 514 F.3d 168, 171 (1st Cir.2008). "When deciding whether the parties agreed to arbitrate a certain matter ... courts generally ... should apply ordinary state-law principles that govern the formation of contracts." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995). "Under Puerto Rican law, an agreement is 'clear' when it can 'be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation....'" Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo Inc., 96 F.3d 10, 15 (1st Cir. 1996) (*quoting* Executive Leasing Corp. v. Banco Popular de Puerto Rico, 48 F.3d 66, 69 (1st Cir. 1995)).

Here, the Court expressly applied those principles of contract interpretation and found that the PCP Agreements comply with the essential elements of a valid contract and, again, Plaintiffs do not contest their formation or validity. Consequently, the Court concluded that a valid agreement to arbitrate exists which also contains a clear and unmistakably delegation clause. However, Plaintiffs dispute the interpretation of the clauses contained in those PCP Agreements regarding arbitrability. Nevertheless, as previously discussed, such "arbitrability issues" which include "objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim" are not within

Civil No. 25-01018 (GMM)
Page -15-

this Court's purview and are instead left to the arbitrator. <u>Toth v. Everly Well, Inc.</u>, 118 F.4th 403, 414 (1st Cir. 2024) (*quoting* Com. Arb. Rules & Mediation Procs. R-7(a) (2013)). Again, the First Circuit has been "clear that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability issues to the arbitrator." <u>Id.</u>

Thus, the Court applied the summary judgment standard, reviewed the record and applicable law, and found no genuine issue of material fact regarding the existence or enforceability of the arbitration agreements between the signatory parties. Considering that the arguments presented in Plaintiffs' Motion to Amend Judgment do not rise to the level of establishing any genuine issues of material fact which would require the Court to engage in a summary trial, the Court declines to amend its prior judgment or allow such a proceeding in this case.

B. <u>Defendants' Motion to Amend Judgment</u>

    1. <u>First Circuit Ruling in Morales-Posada</u>

Defendants agree with the Court's ruling on the *Opinion and Order* yet seek to amend or alter the judgment only as to the issue of arbitrability of claims involving nonsignatories. In dispute here is whether the Court committed a "manifest error of law" when it determined the nonsignatories may be compelled to arbitration,

despite also finding the presence of a delegation clause in the arbitration agreement.

The Court reviews its ruling in light of the First Circuit's recent decision in Morales-Posada v. Cultural Care, Inc., 141 F.4th 301, 309 (1st Cir. 2025), which shares a common issue of law with this Court's previous *Opinion and Order*. In Morales-Posada, the First Circuit ruled that a party who is not a signatory to a contract may not invoke its arbitration provision to compel the arbitration of claims brought by a party who is a signatory. The First Circuit also affirmed a District Court's denial of the motion to compel arbitration.

In the case before this Court, as was true for the Morales-Posada, Defendants assert that the enforceability question may be resolved only by an arbitrator – hence it is not an issue that is properly before the Court. In the same matter as the Defendant Cultural Care did in Morales-Posada, here, nonsignatory Defendants contend that the Court must enforce the delegation agreement in the PCP Agreement in the same manner as the Court would enforce a delegation agreement in any other case in which all parties to the contract are also signatories to the arbitration agreement. Yet, in the case at hand, the facts differ given that certain parties who are bound by the contract did not, however, sign the arbitration agreement. The Supreme Court has specified that

"[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (cleaned up). After all, the "general rule" is that "contractual agreements bind only the parties to the agreement and may be enforced only by those parties." Morales-Posada, 141 F.4th at 309. Accordingly, "just because a signatory has agreed to arbitrate issues of arbitrability with another party does not mean that it must arbitrate with any non-signatory." Menter v. VeSync Corp., No. 3:24-CV-12786-MGM, 2025 WL 2723165, at *1 (D. Mass. Sept. 22, 2025) (quoting Shenango LLC v. Ashland LLC, 2022 WL 4279978, at 5 n.2 (W.D. Pa. Sept. 15, 2022)).

Furthermore, Defendants cite Apollo Computer, Inc. v. Berg, 886 F.2d 469 (1989), in support of its arbitrability argument. However, in Morales-Posada the First Circuit addressed the holding in Berg: In Berg, the defendants were not signatories to the contract but were assigned a signatory's contractual rights by a bankruptcy trustee. 886 F.2d at 470. Under these circumstances, the First Circuit held that the defendants had made a "prima facie showing" that they could enforce the arbitration agreement against the plaintiff based on this assignment and, as a result, the arbitrator would decide the question of arbitrability. Id. at 473. Moreover, in Morales-Posada, the First Circuit explained it "did

not hold in Berg . . . that a party to a lawsuit may force its opponent to arbitrate threshold issues regarding the arbitrability of their dispute so long as that party's opponent is a signatory to some arbitration agreement containing a delegation provision." Morales-Posada, 141 F.4th at 310.

As in Morales-Posada, here the nonsignatory Defendants, MSO, MMM and Dr. Ribot, have not fulfilled the requisite threshold showing that they are entitled to enforce the arbitration agreement - and specifically the purported delegation clause - in the contract between Plaintiffs and Defendants. *See* Morales-Posada, 141 F.4th at 309-11. Unlike in Berg, the record reflects no evidence that there was an assignment of the nonsignatory Defendants' contractual rights to the signatory Defendants and, thus, there is no valid contention that the nonsignatory Defendants stepped into the shoes of the latter for purposes of the arbitration provision. Moreover, the language in the arbitration provision - and in the contract as a whole - naturally reads as applying exclusively to the signatories, rather than contemplating or affirming that nonsignatories may equally compel arbitration.

Consequently, the Court did not err in deciding this issue instead of referring it to the arbitrator.

2.  <u>Equitable Estoppel</u>

In the alternative, Defendants contend they are entitled to enforce the arbitration agreement under the doctrine of equitable estoppel. Defendants argue that equitable estoppel is appropriate because Plaintiffs have relied on the PCP Agreements to assert claims against Defendants, including nonsignatories, and the claims against them are so intertwined that they cannot be appropriately addressed separately.

"Generally, in the arbitration context, 'equitable estoppel allows a nonsignatory to a written agreement containing an arbitration clause to compel arbitration where a signatory to the written agreement <u>must rely on the terms of that agreement in asserting its claims against the nonsignatory</u>.'" <u>GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC</u>, 590 U.S. 432, 437(2020) (emphasis added). "Federal courts 'have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" <u>Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.</u>, 526 F.3d 38, 47 (1st Cir. 2008).

Accordingly, in deciding if equitable estoppel prevents Plaintiffs from avoiding the burden of arbitration, the Court follows the analysis set forth in our prior arbitration cases in

the First Circuit. *See* Puerto Rico Fast Ferries LLC v. SeaTran Marine, LLC, 102 F.4th 538, 550 (1st Cir. 2024). We begin by examining the scope of the Arbitration Clauses. Here, the Arbitration Clauses expressly indicate that it applies to "all disputes arising out of, relating to, or in any way connected to this Agreement or the relationship between IPA and PCP". This broad language is akin to the clause at issue in Sourcing Unlimited, where the First Circuit held that the plaintiff was equitably estopped from avoiding arbitration with defendants who were not signatories of a written arbitration agreement. The Court relied, in part, on the breadth of the arbitration clause there.

Understanding the broad scope of the Arbitration Clauses, the Court must still determine whether the claims against the nonsignatories are sufficiently intertwined with the PCP Agreements. In determining whether claims are "sufficiently intertwined" with a contract containing an arbitration agreement, courts have generally required the claims to be "integrally related to the contract containing the arbitration clause," P.R. Fast Ferries LLC v. SeaTran Marine, LLC, 102 F.4th at 550. The First Circuit has found such a relationship to exist where "resolution of the [signatory's] claims against the nonsignatory 'require[d] reference to and [was] in part based on the underlying [contract].'" Id.

Civil No. 25-01018 (GMM)
Page -21-

A review of the facts demonstrates that the claims here are sufficiently intertwined such that Plaintiffs are equitably estopped from avoiding their burden under the Arbitration Clauses. Here, the claims against nonsignatory Defendants, MSO, MMM and Dr. Ribot, stem from the rights and obligations under the PCP Agreements.

Notably, the Plaintiffs state in their *Complaint* that "MMM is authorized in Puerto Rico to provide, arrange for, and/or administer the provision of prepaid health care services for Medicare beneficiaries that select it." (Docket No. 1 ¶ 25). Also, that "MMM was a [Health Maintenance Organization ("HMO")] for which plaintiffs Caparra, Policlínica, Del Valle, Torres Flores and Torres Figueroa were primary care providers under the program of Medicare Advantage." (Id. at ¶ 28). Further, they posit that "MMM subcontracted the MSO and transferred responsibilities, delegated duties, to provide [sic] administrative, technological and resource support to MMM and IPA" and "[t]hrough MSO, MMM has subcontracted the IPA's to provide with primary care providers certain professional health care services." (Id. at ¶ 26). In addition, Plaintiffs concede that "[a]s of 2021, plaintiffs Caparra, Policlínica, Del Valle, Torres Flores and Torres Figueroa had contracts with different [IPA] to provide primary health services to patient's members of the MMM, which has entered into

Civil No. 25-01018 **(GMM)**
Page -22-

a Medicare Advantage Contract with the Centers for Medicare & Medicaid Services (CMS) as a Health Management Organization. In those contracts MSO and MMM were parties by delegation." (Id. at ¶ 31).

In addition, a review of each of the PCP Agreements admitted on record[7], and which contain identical provisions, show that although MMM and MSO are not signatories, they are integral parties to the agreements, as a direct allusion to MMM and MSO is included in the recitals. Also, both MMM and MSO are referred to throughout the PCP Agreements, and obligations are imposed on MSO. Specifically, the PSC Agreements in their Section 3.4 clearly state that the "PCP agrees that any services provided by PCP to IPA Members will be consistent with and will comply with MSO's contractual obligations." Also, relevant to the main claim regarding payments, the PCP Agreements state in Section 4.1 regarding "Compensation for IPA Services" that "IPA and MSO shall compensate PCP for services to Members, pursuant to the terms of this Agreement as described in this Section IV and Schedule A hereto." Ultimately, on the signature page, though MSO does not

---

[7] See Docket Nos. 65; 67; PCP Agreements executed by Plaintiffs Dr. del Valle, Dr. Torres-Flores, Policlínica Salvador Ribot, and Dr. Matta / Caparra Internal Medicine, and Dr. Torres-Figueroa along with the corresponding Affidavits signed by IPA Castellana's President, Mr. Christian Cruz Santos and Denise De Jesús Rodríguez, AVP of Network Management of MSO.

sign, the PCP Agreements are "Acknowledged and agreed by: MSO of Puerto Rico, LLC".

Further, as to the specific claims, Plaintiffs allege that "[d]ue to MSO and/or IPAs acts or omissions, plaintiffs were not provided or a system was not arranged for the provision of basic health services for a basic health services payment". (Id. at ¶¶ 34-35). These allegations and others included in the *Complaint* certainly revolve around, or are closely related to, the obligations included in the PCP Agreements. Per Plaintiffs' *Complaint*, the nonsignatories' actions and role in the alleged events are seemingly intertwined with those of the signatories.

Thus, Plaintiffs' claims cannot proceed independently without referencing the PCP Agreements. Accordingly, Plaintiffs are equitably estopped from avoiding arbitration.

### IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' *Motion Under Rule 59(e) to Alter or Amend a Judgment* at Docket No. 75 is **DENIED**. *Defendants' Motion to Amend or Alter Judgment under Rule 59(e)* at Docket No. 81 is **GRANTED IN PART**. All parties are compelled to resolve their disputes in arbitration pursuant to the PCP Agreements. The First Circuit has readily established that "a court may dismiss, rather than stay, a case when all of the issues before the court are arbitrable." Dialysis Access Ctr., LLC v. RMS

**Civil No. 25-01018 (GMM)**
**Page -24-**

Lifeline, Inc., 638 F.3d 367 (1st Cir. 2011). Thus, the *Complaint* is hereby dismissed. Amended Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, October 27, 2025.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE